THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED ABDUBA DIDA, # Y51285,   )<br>                                                                  )<br>                            **Plaintiff,**        )<br>    vs.                                                         )        Case No. 3:24-cv-00835-GCS<br>                                                                  )<br>KIMBERLY HVARRE,                              )<br>                                                                  )<br>                            **Defendant.**    ) | |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Mohamed Dida is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Big Muddy River Correctional Center ("BMRCC"). He filed this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, asserting that Defendant Hvarre has prevented him from purchasing food from the commissary and that this is his only source of nutrition. He seeks only injunctive relief.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims.[1] *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture,

---

[1]     The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 3), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that since he filed a previous suit against Warden Hvarre in January 2024,[2] he has "100% depended on the commissary for food." (Doc. 1, p. 6). He attaches an affidavit filed in Case No. 24-cv-131-GCS stating that he was denied food at the prison dietary department on January 6, 2024. (Doc. 1-2, p. 1). He was able to purchase commissary food four times during the month of January 2024. *Id.* He made no food purchases in February 2024 as his funds had run out. On March 4, 2024, he received $200.00 from family; Plaintiff submitted his commissary list the same day and a correctional officer confirmed its delivery. However, commissary staff claimed his list was not delivered and he was not allowed to buy food.

As of March 6, 2024, prison officials observed that Plaintiff's weight had dropped by 20 pounds. (Doc. 1, p. 6). Plaintiff was denied the opportunity to purchase food from the commissary during the week of March 11, 2024. The next week, Plaintiff submitted his purchase list through his counselor, through the mail, and through a porter/correctional officer. However, when he went to make his purchase, he was told all foods were out of stock, while other inmates obtained what they wanted. (Doc. 1, p. 7). Plaintiff asserts it is Hvarre's responsibility to make sure the commissary has sufficient

---

[2] Plaintiff filed *Dida v. Hvarre*, Case No. 24-cv-131-GCS on January 18, 2024, raising First Amendment and RLUIPA claims for denying Plaintiff a diet in compliance with his religious practices.

stock to meet the needs of the inmate population.

After filing his Complaint, Plaintiff filed three "Affidavits of Truth" (Doc. 6, 11, and 12),[3] and a Motion to Amend Relief (Doc. 13). In the first affidavit, Plaintiff states that on March 6, 2024, Defendant Hvarre sent the prison chaplain to his cell to ask why Plaintiff's weight had dropped to 143.6 pounds. Hvarre instructed that Plaintiff should not be allowed to purchase anything from the commissary. (Doc. 6).

Plaintiff's second affidavit details his food purchases and purchasing attempts beginning in January 2024. (Doc. 11). On March 4, 2024, and March 12, 2024, he was turned away after being told he had not submitted a purchase list, although he had done so. (Doc. 11, p. 1-2). On March 19, 2024, and March 25, 2024, Plaintiff submitted a purchase list, had three copies of it signed by a correctional officer, and submitted the three copies by different methods. (Doc. 11, p. 3). He was allowed to attend commissary but was told all items were out of stock. On April 1, 2024, correctional officers refused to witness his purchase list and he was not able to purchase food. (Doc. 11, p. 4). He lost more than 30 pounds in the month of March 2024, with his weight dropping from 168 pounds to 134 pounds. (Doc. 11, p. 6).

Plaintiff's June 4, 2024, affidavit states that he was able to obtain food from commissary for three weeks through another inmate who bought items for him. (Doc. 12,

---

[3] The Court does not ordinarily permit piecemeal amendments to a Complaint such as Plaintiff is attempting with his "affidavits of truth." However, as a *pro se* litigant, Plaintiff will be afforded some latitude in this regard, and the Court will consider the contents of his affidavits. *See Otis v. Demarasse*, 886 F.3d 639, 644-645 (7th Cir. 2018); *Miller v. Larson*, No. 18-2347, 2018 WL 6584907, at *1 (7th Cir. Dec. 14, 2018).

p. 2). However, on May 1, 2024, that inmate and Plaintiff were moved to separate housing areas to prevent this practice. In March and April 2024, Hvarre filed false disciplinary charges against Plaintiff, but he was exonerated. (Doc. 12, p. 3, 9-10). On May 9, 2024, Hvarre filed disciplinary charges and blocked his phone calls,[4] preventing his wife from sending him food money "through willing inmates." (Doc. 12, p. 4).

Finally, Plaintiff's Motion to Amend Relief, filed July 16, 2024, asserts that in addition to denying him the ability to purchase food, Hvarre blocked and denied his telephone privileges (Doc. 13, p. 2). He states his weight is now down to 120 pounds (Doc. 13, p. 3). The motion does not state what additional relief Plaintiff seeks.

The Complaint seeks injunctive relief including improving the system for inmates to submit commissary purchase lists to prevent interference and adequate stocking of commissary food to ensure availability (Doc. 1, p. 8).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1: Eighth Amendment deliberate indifference claim against Hvarre for failing to ensure adequate food supplies in the commissary, preventing Plaintiff from maintaining adequate nutrition.
>
> Count 2: First Amendment retaliation claim against Hvarre, for blocking Plaintiff's ability to purchase food from the commissary after Plaintiff filed suit against her in Case No.

---

[4] Plaintiff attaches a May 9, 2024, Final Summary Report for two disciplinary charges, showing he was found guilty of disobeying a direct order to stop yelling in violation of the rules on quiet time; he was punished with one month on B Grade. (Doc. 12, p. 10). Inmates on B Grade typically have restricted telephone privileges.

24-cv-131-GCS (S.D. Ill. Jan. 18, 2024).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[5]

### Count 1

The Eighth Amendment prohibits the infliction of cruel and unusual punishment, including the imposition of conditions of confinement that deny a prisoner "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To satisfy the deliberate indifference standard, a prison official must have acted or failed to act despite their knowledge of a substantial risk of serious harm to the plaintiff from the conditions. *See Farmer*, 511 U.S. at 842. Mere negligence is not enough to violate the Constitution. *See Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986).

Plaintiff's Complaint focuses on the inadequacy of food supplies in the prison commissary. His factual allegations do not indicate that Hvarre knew that the

---

[5] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

commissary failed to stock sufficient items to allow Plaintiff to fill his food orders yet failed to take action to remedy this problem. At most, the Complaint indicates possible negligence on the part of Hvarre regarding the inadequate commissary stocks, which is not enough to support an Eighth Amendment claim.

Moreover, the undersigned is cognizant of the proceedings in Plaintiff's earlier case against Hvarre, *Dida v. Hvarre*, Case No. 24-cv-131-GCS. The undersigned concluded, based on the evidence of record in that case, that Plaintiff had not shown he was entitled to preliminary injunctive relief based on the alleged denial of access to food from the prison's dietary department. *See Dida v. Hvarre*, Case No. 24-cv-131-GCS (Doc. 11, April 24, 2024). "There is no evidence that Plaintiff was forced to choose between his religious practice of eating outside daylight hours and receiving adequate nutrition. He has the option of going to dietary before sunrise and after sunrise [sic] and eating the food in dietary as all other inmates and has chosen not to go to dietary." *Id.* at p. 9.

For these reasons, Plaintiff's deliberate indifference claim in Count 1 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 2**

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the

retaliatory action. *McKinley v. Schoenbeck*, No. 17-1709, 731 Fed. Appx. 511, 515 (7th Cir. April 17, 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-879 (7th Cir. 2011)); *see also Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff alleges that after he filed suit against Hvarre in Case No. 24-cv-131-GCS, Hvarre prevented him from purchasing food from the commissary, and instructed staff not to allow him to buy items there. Taking this allegation as true, Plaintiff may proceed with the retaliation claim in Count 2 against Hvarre.

## PENDING MOTION

Plaintiff's Motion to Amend Relief (Doc. 13) is **GRANTED IN PART** to the extent that Plaintiff's allegations are considered herein. However, the motion is **DENIED IN PART** as Plaintiff did not articulate any change or addition to the relief sought in his original Complaint.

## DISPOSITION

**IT IS HEREBY ORDERED** that Count 2 against Warden Hvarre survives initial screening. Count 1 is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk shall prepare for Warden Kimberly Hvarre: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to

sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

DATED: October 22, 2024.

Digitally signed by Judge Sison
Date: 2024.10.22 14:27:01 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the Defendant of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendant will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendant's Answer, but it is entirely possible that it will take **90 days** or more. When Defendant has filed their Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, to give the Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.